*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A15-0397**

Negassi H. Ghebrehiwet,
Appellant,

vs.

Khaled Ghneim, et al.,
Respondents.

**Filed January 11, 2016
Affirmed in part, reversed in part, and remanded
Larkin, Judge**

Ramsey County District Court
File No. 62-CV-13-5919

Mikael Merissa, Merissa Law Firm, Minneapolis, Minnesota (for appellant)

James D. Capra, St. Paul, Minnesota (for respondents)

Considered and decided by Bjorkman, Presiding Judge; Worke, Judge; and Larkin, Judge.

# U N P U B L I S H E D   O P I N I O N

**LARKIN**, Judge

Appellant landlord challenges the district court's award of damages and penalties to respondent tenants for landlord's breach of the statutory covenants of habitability and the tenants' statutory right to privacy. Because respondent tenants failed to prove reasonably

exact, nonspeculative damages stemming from appellant's breach of the covenants of habitability, we reverse in part. But because the district court did not abuse its discretion in awarding a penalty for landlord's multiple breaches of tenants' statutory right to privacy, we affirm in part and remand for entry of an amended judgment consistent with this opinion.

## FACTS

On July 1, 2012, respondents Khaled and Asam Ghneim (the Ghneims) leased a residential property from appellant Negassi Ghebrehiwet. The written lease agreement established a rental period of July 1, 2012 to June 30, 2013, and a rental rate of $1,100 per month. The Ghneims did not move into the rental unit until on or about July 7, because the unit was not ready for occupation.

On May 17, 2013, Ghebrehiwet commenced an action in conciliation court, claiming that the Ghneims failed to pay their May rent and associated late fees, as well as late fees associated with their April rent. The conciliation court held a hearing on June 24 and ruled that Ghebrehiwet violated the Ghneims' right to privacy under Minn. Stat. § 504B.211, subd. 2 (2014) and that the Ghneims were therefore "entitled to a rent reduction." In July 2013, the Ghneims vacated the rental unit.

On August 14, Ghebrehiwet removed the case to district court for a trial de novo. In his district court complaint, Ghebrehiwet claimed that the Ghneims breached the lease by failing to pay rent in May, June, and July and by remaining in possession of the rental unit after the rental period expired on June 30, 2013. He also alleged that the Ghneims had "willfully and maliciously" damaged the rental unit. The Ghneims counterclaimed that the

2

condition of the rental unit during the tenancy breached the covenants of habitability under Minn. Stat. § 504B.161 (2014) and that Ghebrehiwet's actions during the tenancy breached their statutory right to privacy under Minn. Stat. § 504B.211 (2014).

On September 9, 2014, the district court held a bench trial. By the agreement of the parties, a consensual special magistrate presided over the trial and drafted findings of fact, conclusions of law, and an order for judgment, which were subsequently approved and adopted by the district court. The district court concluded that the Ghneims are liable to Ghebrehiwet for $1,952 in unpaid rent for June and July 2013, which included a set off of $248 for the first week of July 2012. The district court rejected Ghebrehiwet's other claims. The district court ruled in favor of the Ghneims on their counterclaims, awarding them damages of $3,300 (the equivalent of three months' rent) for Ghebrehiwet's breach of the covenants of habitability, and penalties totaling $3,300 for Ghebrehiwet's numerous privacy violations.

Ghebrehiwet appeals the district court's award of damages and penalties. The Ghneims have not filed a responsive brief.

## D E C I S I O N

## I.

Ghebrehiwet contends that the district court erred by abating, as damages, "the entire amount of rent due for the three months [in which it] found . . . violations of the warranty of habitability." He argues that because the Ghneims "remained in possession of the property during that time," the Ghneims "should only be compensated for the diminution in the value of the property they bargained for." Ghebrehiwet does not

3

challenge the district court's finding that he violated the covenants of habitability; he argues that the district court erred by failing to calculate damages based on diminution of value. "The application of law to established facts is a question of law, which this court reviews de novo." *Longbehn v. Schoenrock*, 727 N.W.2d 153, 158 (Minn. App. 2007).

Minn. Stat. § 504B.161, subd. 1(a), establishes a number of covenants, which are an implied part of every lease of residential premises and which are known as the covenants of habitability. *See Fritz v. Warthen*, 298 Minn. 54, 56-57, 213 N.W.2d 339, 340-41 (1973) (referring to the "statutory covenants of habitability" in a prior version of the statute). For example, the statute provides that the landlord covenants:

> (1) that the premises and all common areas are fit for the use intended by the parties;
> (2) to keep the premises in reasonable repair during the term of the lease or license, except when the disrepair has been caused by the willful, malicious, or irresponsible conduct of the tenant or licensee or a person under the direction or control of the tenant or licensee;
> . . . .
> (4) to maintain the premises in compliance with the applicable health and safety laws of the state, and of the local units of government where the premises are located during the term of the lease or license, except when violation of the health and safety laws has been caused by the willful, malicious, or irresponsible conduct of the tenant or licensee or a person under the direction or control of the tenant or licensee.

Minn. Stat. § 504B.161, subd. 1(a).

The district court determined that the Ghneims "amply established that [Ghebrehiwet] breached the statutory [covenants] of habitability in many ways throughout much, if not all, of the tenancy." But the district court also found that the Ghneims' testimony regarding their resulting damages "lacked specificity and documentation." The

4

district court noted that the Ghneims did not provide photographs or a contemporaneous record showing the precise nature of each problem at the rental unit, when each problem began, when and how the Ghneims complained to Ghebrehiwet about each problem, or when, if at all, Ghebrehiwet fixed each problem. Because the Ghneims failed to present specific proof of their damages, the district court "determined that a percentage rebate would not be appropriate." Instead, the district court focused on the three months "in which the evidence showed the most severe problems." In September 2012, there was a "pervasive smell of sewage" in the rental unit, and in January and February 2013, there was flooding in the rental unit from a leaking roof and "no heat." The district court concluded that the Ghneims were "entitled to a rebate of the monthly rent" for those three months.

Minn. Stat. § 504B.161, subd. 1, does not mandate a particular remedy for breach of the covenants of habitability. Instead, potential remedies are found in other sections of chapter 504B that govern landlord-tenant relationships. Minn. Stat. §§ 504B.001-.471 (2014). For example, section 504B.395 generally authorizes a residential tenant of a residential building to bring an action in district court if the tenant alleges that the building contains a violation of any of the covenants set forth in section 504B.161, subdivision 1(1)-(2).[1] Minn. Stat. §§ 504B.395, subd. 1(1), .001, subd. 14(2); *see generally* Minn. Stat. §§

---

[1] Similarly, section 504B.385 authorizes a tenant to bring a rent-escrow action to remedy a violation of the covenants of habitability. Minn. Stat. § 504B.385, subd. 1. If the district court finds that a violation exists in a rent-escrow action, the court has discretion to "order relief as provided in section 504B.425, including retroactive rent abatement." Minn. Stat. § 504B.385, subd. 9(a)(1).

5

504B.395-.471 (governing tenant-remedies actions). If the tenant prevails in such an action, the district court may, among other remedies,

> find *the extent to which* any uncorrected violations impair the residential tenants' use and enjoyment of the property contracted for and order the rent *abated accordingly*. If the court enters judgment under this paragraph, the parties shall be informed and the court shall determine *the amount by which the rent is to be abated.*

Minn. Stat. § 504B.425(a), (e) (emphasis added).

The emphasized portions of section 504B.425 indicate that the district court must use a proportionate approach when it retroactively abates rent as a remedy for an established violation of the covenants of habitability. Thus, Ghebrehiwet's argument that the district court erred by failing to calculate damages based on diminution of value is persuasive. We are not aware of any precedential authority indicating that a tenant is automatically entitled to retroactive abatement of an entire month's rent for any month in which a violation of the covenants of habitability occurred.

As to proof of diminution in value, the statutory covenants of habitability are "made a part of the lease" by "statutory mandate" rather than by agreement of the parties. *Fritz*, 298 Minn. at 57-58, 213 N.W.2d at 341. "A lease is a contract. . . ." *Amoco Oil Co. v. Jones*, 467 N.W.2d 357, 360 (Minn. App. 1991). A tenant's claim for damages based on a breach of the statutory covenants of habitability therefore sounds in contract law. A party seeking damages for breach of contract must prove the party's damages by a preponderance of the evidence. *See Wick v. Widdell*, 276 Minn. 51, 53-54, 149 N.W.2d 20, 22 (1967) ("In an ordinary civil action the plaintiff has the burden of proving every essential element of

6

his case, including damages by a fair preponderance of the evidence."). "Generally, damages need not be proved with absolute certainty nor with mathematical precision. Sufficient proof must be given, however, to avoid speculative awards." *Bethesda Lutheran Church v. Twin City Constr. Co.*, 356 N.W.2d 344, 348 (Minn. App. 1984), *review denied* (Minn. Feb. 5, 1985). "While the law most certainly does not require that damages be calculable with absolute precision, damages must nevertheless be ascertainable with reasonable exactness and may not be the product of benevolent speculation." *Faust v. Parrott*, 270 N.W.2d 117, 120 (Minn. 1978).

As the district court noted, it is impossible to determine the extent to which Ghebrehiwet's violations of the covenants of habitability impaired the Ghneims' use and enjoyment of the property because the Ghneims' testimony "lacked specificity and documentation." Because the Ghneims did not meet their burden to prove reasonably exact, nonspeculative damages, the district court should not have awarded damages. *See, e.g.*, *Kohn v. City of Minneapolis Fire Dep't*, 583 N.W.2d 7, 15 (Minn. App. 1998) (reversing damages award for harm to reputation because plaintiff's evidence was too speculative), *review denied* (Minn. Oct. 20, 1998). Instead, the district court awarded $3,300 in damages, which is the entire amount of the rent for the three months in which the most severe violations occurred. Essentially, the damage award reflects a determination that the Ghneims did not receive *any* use and enjoyment from the rental unit during those months. The record simply does not support such a determination.

Given the record in this case, the only possible justification for the damage award is reliance on tort law. The district court noted that "[a]t least one court" outside of

7

Minnesota "has dealt with the dearth of specific, documentary evidence with an analogy to tort law." The district court relied on *Tower W. Assocs. v. Derevnuk*, in which the court allowed and determined damages for breach of a covenant of habitability "under a theory similar to an allowance of damages for 'pain and suffering' or mental distress." 450 N.Y.S.2d 947, 953 (Civ. Ct. 1982). But Minnesota has not endorsed that approach. In fact, Minnesota law clearly provides that a tort recovery is not allowed on a breach of contract claim. "[A] party is not responsible for damages in tort if the duty breached was merely imposed by contract." *Glorvigen v. Cirrus Design Corp.*, 816 N.W.2d 572, 584 (Minn. 2012) (quotations omitted).

In sum, because the Ghneims failed to meet their burden to prove reasonably exact, nonspeculative damages resulting from Ghebrehiwet's breach of the covenants of habitability, the district court erred by abating three full months of rent as damages. We therefore reverse the award.

## II.

Ghebrehiwet also contends that the district court erred in ordering penalties for his violations of section 504B.211, which is entitled "residential tenant's right to privacy" and provides that "a landlord may enter the premises rented by a residential tenant only for a reasonable business purpose and after making a good faith effort to give the residential tenant reasonable notice under the circumstances of the intent to enter." Minn. Stat. § 504B.211, subd. 2. "If a landlord substantially violates subdivision 2, the residential tenant is entitled to a penalty which may include a rent reduction up to full rescission of the lease,

recovery of any damage deposit less any amount retained under section 504B.178, and up to a $100 civil penalty for each violation." Minn. Stat. § 504B.211, subd. 6.

This court reviews a district court's imposition of a civil penalty for an abuse of discretion. *See, e.g.*, *State v. Alpine Air Prods., Inc.*, 490 N.W.2d 888, 897 (Minn. App. 1992) (concluding that the district court acted within its discretion in ordering statutorily authorized civil penalty), *aff'd on other grounds*, 500 N.W.2d 788 (Minn. 1993). The district court must adequately explain the reasons for its award of a penalty. *See, e.g.*, *Geske v. Marcolina*, 624 N.W.2d 813, 819 (Minn. App. 2001) (remanding conduct-based attorney fees because district court failed to identify the conduct that justified the award and whether it occurred during litigation). "A district court abuses its discretion when it bases its conclusions on an erroneous view of the law." *Miller v. Lankow*, 801 N.W.2d 120, 127 (Minn. 2011).

Ghebrehiwet argues that the appropriate penalty for the multiple privacy violations in this case is $100 because the district court did not "enumerate the separate instances of the [privacy] violation but merely award[ed] a lump sum." Ghebrehiwet also argues that the district court "commit[ted] reversible error when it [made] lump sum awards of twenty three times the statutory limit for one instance of a violation of a residential tenant's right to privacy."

The district court awarded the Ghneims a total of $3,300 in penalties for Ghebrehiwet's violations of their statutory right to privacy. The district court explained that $1,000 of the award is based on "[Ghebrehiwet's] multiple violations of subdivision 2 that occurred before [the Ghneims] complained." This penalty is authorized so long as the

9

record sustains a finding that Ghebrehiwet "substantially violated" section 504B.211, subdivision 2, ten times. *See* Minn. Stat. § 504B.211, subd. 6 (authorizing a "$100 civil penalty for each violation").

The district court did not support its imposition of the $1,000 penalty with factual findings describing ten individual violations. However, the district court determined that "[Ghebrehiwet] repeatedly violated Minnesota Statutes section 504B.211, subdivision 2," noting that "[t]he testimony of Mr. Ghneim and especially Ms. Ghneim were quite persuasive [regarding] this issue." Mr. Ghneim testified that Ghebrehiwet "[came] every day, every single day" to the rental unit and estimated that Ghebrehiwet was there "over a hundred time[s]." Ms. Ghneim testified that Ghebrehiwet "came almost every day, or almost every other day."

Based on this testimony, the district court concluded that "[the Ghneims] proved *substantially more* than 10 substantial violations" of their right to privacy under Minn. Stat. § 504B.211, subd. 2. (Emphasis added.) However, the district court limited the penalty for the violations to $1,000, reasoning that Ghebrehiwet's "[compliance] with the notice requirement once [the Ghneims] demanded that he follow the law in that respect" is a mitigating circumstance. Because the district court found that the Ghneims proved at least ten substantial violations of their right to privacy under Minn. Stat. § 504B.211, subd. 2, and the record supports that finding, the district court did not abuse its discretion by awarding an aggregate civil penalty of $1,000.

The district court awarded the Ghneims an additional $2,300 penalty based on a "Bedroom Incident." During that incident, Ghebrehiwet entered the master bedroom of

10

the rental unit without permission, caused Ms. Ghneim to wake up and "suffer the shock of finding [Ghebrehiwet] and another male within feet of her." Ghebrehiwet ignored Ms. Ghneim's demand that he and his companion leave immediately. Instead, they remained in the bedroom even after Ms. Ghneim's son entered the room and ordered them to leave. Based on those facts, the district court concluded that this event was an "egregious violation" of Ms. Ghneim's privacy. The district court reasoned that "[i]t is hard to imagine any more egregious violation of a woman tenant's privacy rights without contemplating a physical assault." We agree.

The $2,300 award for the "Bedroom Incident" is comprised of (1) a $1,100 rent reduction for the month in which the "Bedroom Incident" occurred, (2) recovery of the Ghneims' $1,100 damage deposit, and (3) the maximum statutory civil penalty of $100. Section 504B.211 specifically authorizes those amounts. *See* Minn. Stat. § 504B.211, subd. 6 ("If a landlord substantially violates subdivision 2, the residential tenant is entitled to a penalty which may include a rent reduction up to full rescission of the lease, recovery of any damage deposit less any amount retained under section 504B.178, and up to a $100 civil penalty for each violation."). Because Minn. Stat. § 504B.211, subd. 6, allowed the district court to award a full rent reduction, recovery of the damage deposit, and a civil penalty of $100, and because the district court adequately explained why those remedies are appropriate, the district court did not abuse its discretion in awarding the Ghneims a penalty of $2,300 for the "Bedroom Incident."

11

In sum, the district court's award of $3,300 in penalties for Ghebrehiwet's violations of the Ghneims' right to privacy under Minn. Stat. § 504B.211, subd. 2, is not an abuse of discretion.

*Conclusion*

Because the Ghneims did not meet their burden to prove reasonably exact, nonspeculative damages stemming from Ghebrehiwet's violation of the covenants of habitability, we reverse the district court's award of damages for the Ghneims in the amount of $3,300. But because the district court's $3,300 penalty for Ghebrehiwet's violation of the Ghneims' privacy rights is not an abuse of discretion, we affirm the penalty. We remand for entry of an amended judgment consistent with this opinion.

**Affirmed in part, reversed in part, and remanded.**